IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: RENTAL CAR INTERMEDIATE HOLDINGS, LLC,<br><br>Reorganized Debtor. | ) | Chapter 11<br>Case No. 20-11247 (MFW)<br>(Jointly Administered) |
| 900 ATLANTIC COLLISION, INC., 950 ATLANTIC COLLISION, INC., 1050 ATLANTIC COLLISION, INC., 1100 ATLANTIC COLLISION, INC., AND VIRGINIA COLLISION CORP.,<br><br>Appellants,<br>v.<br><br>RENTAL CAR INTERMEDIATE HOLDINGS, LLC,<br><br>Appellee. | ) | C.A. No. 25-1268 (MN) |

**MEMORANDUM OPINION**

Jordan L. Williams, BLANK ROME LLP, Wilmington, DE; John E. Lucian, Matthew E. Kaslow, Blank Rome LLP, Philadelphia, PA—Counsel to appellants, 900 Atlantic Collision, Inc., et al.

Robert J. Stearn, Jr., Zachary J. Javorsky, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; William C. O'Neil, Gretchen V. Scavo, Tyler Richrds, WINSTON & STRAWN LLP, Chicago, IL—Counsel to appellee, Rental Car Intermediate Holdings, LLC

September 30, 2026
Wilmington, Delaware

Maryellen Noreika
**NOREIKA, U.S. DISTRICT JUDGE**

## I. BACKGROUND[1]

This appeal arises in the chapter 11 case of reorganized debtor Rental Car Intermediate Holdings, LLC ("the Reorganized Debtor"), the sole remaining debtor in chapter 11 cases filed by Hertz Corporation and its affiliates (collectively, "Hertz"). Hertz was a global rental car enterprise that filed voluntary chapter 11 petitions on May 22, 2020. On June 10, 2021, the Bankruptcy Court confirmed the Hetz's Plan of Reorganization (A442-548)[2] (Lead Bankr. D.I. 5261). The plan provides for payment in full, plus interest, of all claims against the estate and the continued existence of the Hertz enterprise.

Appellants (together, "ACI")[3] filed five proofs of claim[4] ("the Claims") against Hertz based upon Hertz's alleged pre-petition breaches of three commercial lease and service contracts ("the ACI Agreements"), which granted ACI an exclusive or semi-exclusive right to perform auto-body

---

1 The thorough Opinion summarizes in detail the terms of the parties' agreements, the history of their dealings, and the various aspects of their contractual dispute, including hundreds of citations to the trial record in support of the Bankruptcy Court's careful findings of fact and conclusions of law. *See In re Rental Car Intermediate Holdings, LLC,* 2025 WL 2828228 (Bankr. D. Del. Oct. 3, 2025). Because the Court writes primarily for the parties, and the Bankruptcy Court's findings of fact are either not disputed or not relevant to the legal issue before the Court, background information is not repeated herein. Certain procedural history is set forth to the extent it is relevant to Court's analysis of the substantive issue on appeal.

2 The docket of the remaining chapter 11 case, captioned *In re Rental Car Intermediate Holdings*, No. 20-11247 (MFW) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The docket of the lead chapter 11 case, captioned *In re The Hertz Corporation, et al*., No. 20-11218 (MFW) (Bankr. D. Del.), is cited herein as "Lead Bankr. D.I. __." The appendix (D.I. 16) filed in support of ACI's opening brief is cited herein as "A__," and the appendix (D.I. 20) filed in support of the Reorganized Debtor's answering brief is cited herein as "B__."

3 "ACI" includes appellants 900 Atlantic Collision, Inc., 950 Atlantic Collision, Inc., 1050 Atlantic Collision, Inc., 1100 Atlantic Collision, Inc., and Virginia Collision Corp.

4 *See* A1-379 (Proofs of Claim Nos. 10492, 10732, 10824, 10891, and 12486.)

work for Hertz's fleets in New Jersey, Virginia, and Florida.[5] Following plan confirmation, the Reorganized Debtor objected to ACI's Claims (Bankr. D.I. 1401) ("the Claims Objection"). Discovery followed.[6] Following a three-day evidentiary hearing held on October 29-31, 2024, the Bankruptcy Court issued an Order (Bankr. D.I. 1840) ("the Order"), which sustained the Claims Objection for the reasons set forth in its accompanying opinion, *In re Rental Car Intermediate Holdings, LLC*, 2025 WL 2828228 (Bankr. D. Del. Oct. 3, 2025) ("the Opinion").

The Bankruptcy Court concluded, *inter alia,* that "the evidence clearly demonstrates that Hertz failed to inform its employees of its contractual obligations to ACI and lacked a policy to ensure compliance with the ACI Agreements' exclusivity requirements. As a result, Hertz's damage appraisers continued to send tens of thousands of vehicles to non-ACI shops for repair in violation of the ACI Agreements' exclusivity provisions. *Id*. at *8 (footnotes omitted). It further found that "Hertz did not advise ACI that it was sending work to non-ACI body shops, and often did so in a surreptitious way," and despite ACI having "advised Hertz that it had the capacity for more work," in violation of the ACI Agreements' exclusivity provisions. *Id*. at *11. The Bankruptcy Court further found that Hertz did not properly terminate one of the ACI Agreements. *Id.* at *16.

In support of ACI's damages, which are based on its lost profits and asserted in the amount of $12,615,362 plus interest, ACI presented the testimony of a damages expert, whose calculation was based upon his assessment of what ACI "should" have earned under the ACI Agreements compared to what ACI actually earned, and which stated that the calculation was performed to a

5 On November 15, 2017, ACI filed a complaint in New York state court against Hertz asserting these claims. When Hertz filed bankruptcy, ACI filed its Claims based on the same allegations.

6 Each party asserts discovery misconduct based on the other party's alleged failures to preserve and/or produce relevant records. *See In re Rental Car*, 2025 WL 2828228, at *21-22 n.150 & 153 (describing discovery disputes).

reasonable degree of accounting certainty. *See id.* at *17. The Reorganized Debtor argued ACI had failed to establish its lost profit damages with reasonable certainty as required under New York law, which governed the ACI Agreements, based on various flaws in the calculation, which are set forth in detail in the Opinion, *see id*. at *17-22, including, among other things, that the entire calculation was based on the incorrect premise that ACI had unlimited capacity and could have handled all of the repair work that Hertz generated, a premise supported only by the testimony of ACI's owner and president, Marc Capus, which was contradicted by other evidence in the record, *see id*. at *23-27. The Bankruptcy Court ultimately agreed with the Reorganized Debtor that ACI had failed to meet its burden of "proving damages that are reasonably certain," thus concluding that ACI was entitled to no damages as a result of Hertz's breach of the Agreements. *Id.* at *28. The Order disallowed ACI's Claims in their entirety.

On October 16, 2025, ACI filed a timely notice of appeal. (D.I. 1). The appeal is fully briefed. (D.I. 15, 19, 25). No party requested oral argument. ACI's primary argument on appeal is that the "failure to award damages resulted from a flawed application of New York law on damages whereby the Bankruptcy Court demanded greater precision than such law requires." (D.I. 15 at 2). Simply put, ACI argues that although its lost profits were in fact general damages under New York law, the Bankruptcy Court held ACI to the higher burden, which is applicable only when a non-breaching party seeks to recover lost profits as consequential damages, which are only recoverable where "the extent of the loss is capable of proof with reasonable certainty." *See Tractebel Energy Mktg., Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 109 (2d Cir. 2007). Properly viewed as general damages under New York law, however, ACI argues that it was required to prove only that "the ***fact*** of its [lost profit] damages" is "**reasonably certain**," and as to amount, it "need only show **a stable foundation for a reasonable estimate** of the damage incurred as a result of the breach." *Id.* (internal quotations omitted) (emphasis added). The Reorganized Debtor, which consistently

cited the standard applicable to consequential damages, asserts that ACI failed to preserve this argument, having never presented it to Bankruptcy Court. (*See* D.I. 19 at 30-36). ACI replies that the case law consistently cited in its briefs applied the standard applicable to lost profits as general damages, and that it refuted that its damages were not capable of proof with reasonable certainty only to avoid otherwise conceding the Reorganized Debtor argument. ACI further contends that, even if this Court were to conclude that it somehow forfeited application of the correct standard under New York law, this Court retains discretion to consider the argument on appeal. (*See* D.I. 25 at 18-21).

As it is (i) clear from the record that the Reorganized Debtor misstated to the Bankruptcy Court, and ACI failed to clearly set forth, the standard applicable to recovery of lost profits as general damages under New York law, but (ii) unclear whether ACI carried its burden of "show[ing] a stable foundation for a reasonable estimate of the damage incurred as a result of the breach," *Tractebel Energy Mktg.,* 487 F.3d at 110, the Court will remand the Order for further proceedings.

## II. <u>JURISDICTION AND APPLICABLE STANDARDS</u>

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). "An order allowing or disallowing a claim is a final, appealable order." *In re Prosser*, 388 F. App'x 101, 102 n.1 (3d Cir. 2010) (quoting *Orsini Santos v. Mender,* 349 B.R. 762, 768 (1st Cir. BAP 2006)).

"On appeal from a bench trial, [a] court reviews [the trial court's] findings of fact for clear error and its conclusions of law *de novo*." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282-83 (3d Cir. 2014). For mixed questions of law and fact, a reviewing court "appl[ies] the clearly erroneous standard except that the [trial court]'s choice and interpretation of legal precepts remain subject to plenary review." *Id.* at 283. With respect to damages, an appellate court reviews *de novo* the trial court's "determination of what legal standard to apply when calculating damages" and

"whether that standard was properly applied." *VICI Racing*, 763 F.3d at 283. In reviewing a trial court's factual findings, however, reviewing courts "are to give due regard to the opportunity of that court to judge first-hand the credibility of witnesses." *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002). An appellate court's review of the trial court's credibility determinations is "particularly deferential," such that a "finding of fact is clearly erroneous when it is 'completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" *VICI Racing*, 763 F.3d at 283.

## III. ANALYSIS

### A. Breach of Contract Under New York Law

As the Bankruptcy Court observed, "[t]he essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *In re Rental Car,* 2025 WL 2828228, at *2 n.16 (citing *WMC Realty Corp. v. City of Yonkers*, 148 N.Y.S. 3d 161, 167 (N.Y. App. Div. 2021). The Bankruptcy Court ruled in ACI's favor as to the existence of the Agreements, ACI's performance thereunder, and Hertz's breach of the Agreements' exclusivity provision, rejecting Hertz's defenses that ACI lacked the capacity to perform the work or that ACI had otherwise waived Hertz's breach. *See id*. *2-16.

The Opinion leaves little doubt that Hertz's breach resulted in lost profit damages, finding that "ACI repeatedly requested additional work from Hertz, which [Capus] states ACI could have undertaken" (*id*. at *4), that "ACI presented documents which corroborated Capus's testimony" (*id.* at *5), and that "there was substantial evidence that Hertz was referring work to other shops even when ACI had capacity to do it" (*id*. at *9), yet "Hertz's damage appraisers continued to send tens of thousands of vehicles to non-ACI shops for repair in violation of the ACI Agreements' exclusivity provisions" (*id*. at *8). Notwithstanding these findings, the Bankruptcy Court explained that

because of the "errors in [ACI's expert's] calculation of damages" and "unreasonable assumptions about ACI's capacity to handle all of Hertz's work" it "could not conclude that his damages calculation was reasonable," and held ACI failed to meet its burden of "proving damages that are reasonably certain and directly traceable to any breach of the [ACI] Agreements by Hertz." *Id.* at *28. In so holding, the Bankruptcy Court applied the standard consistently cited by the parties.

## B. Lost Profits as General Damages Under New York Law

ACI's Claims are based on Hertz's breach of ACI's bargained for exclusivity by sending tens of thousands of cars to non-ACI shops, and its damages are ACI's lost profits resulting from that breach. The parties agree that New York law governs the ACI Agreements. (Bankr. D.I. 1690 ¶ 44 n.5; Bankr. D.I. 1691 ¶ 197). Under New York law, the burden a party seeking to recover lost profits damages must meet depends on whether the lost profits resulting from the breach are general damages or consequential (special) damages, as explained by the Second Circuit:

> Lost profits are **consequential damages** when, as a result of the breach, the non-breaching party suffers **loss of profits on collateral business arrangements.** In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are "lost." . . . In New York, a party is entitled to recover this form of lost profits **only if** (1) it is demonstrated with certainty that the damages have been caused by the breach, (2) **the extent of the loss is capable of proof with reasonable certainty,** and (3) it is established that **the damages were fairly within the contemplation of the parties**.

*Tractebel Energy Mktg.*, 487 F.3d at 109 (emphasis added) (citing *Kenford Co. Inc. v. Cty. of Erie,* 67 N.Y.2d 257, 261 (1986)). *See also, Am. List Corp. v. U.S. News & World Report, Inc.,* 75 N.Y.2d 38, 43 (1989) ("special damages are extraordinary in that they do not so directly flow from the breach. These extraordinary damages are recoverable only upon a showing that they were

foreseeable and within the contemplation of the parties at the time the contract was made.") (citations omitted).

Where lost profits are general damages, on the other hand, the Second Circuit explains:

> By contrast, when the non-breaching party seeks **only to recover money that the breaching party agreed to pay under the contract**, the damages sought are **general damages**. **The damages may still be characterized as lost profits since, had the contract been performed, the non-breaching party would have profited to the extent that his cost of performance was less than the total value of the breaching party's promised payments. But, in this case, the lost profits are the direct and probable consequence of the breach**. The profits are precisely what the non-breaching party bargained for, and only an award of damages equal to lost profits will put the non-breaching party in the same position he would have occupied had the contract been performed.

*Tractebel Energy Mktg.*, 487 F.3d at 109-110 (citing *Am. List Corp.,* 75 N.Y.2d at 44) (internal citations omitted) (emphasis added). *See also Biotronik v. Conor Medsystems,* 22 N.Y.3d 799, 806 (Ct. App. 2014) (explaining that "[l]ost profits may be either general or consequential damages, depending on whether the non-breaching party bargained for such profits and they are "the direct and immediate fruits of the contract" and that "[t]he distinction at the heart of these cases is whether the lost profits flowed directly from the contract itself or were, instead, the result of a separate agreement with a nonparty."). With respect to the non-breaching party's burden of estimating general damages, the Second Circuit explains:

> It has long been established in New York that a breaching party is liable for all direct and proximate damages which result from the breach. *Wakeman v. Wheeler & Wilson Mfg. Co.,* 56 Sickels 205, 209, 101 N.Y. 205, 4 N.E. 264, 266 (1886). The damages, however, "must be not merely speculative, possible, and imaginary, but they must be *reasonably certain* and such only as actually follow or may follow from the breach of the contract." *Id.* (emphasis added). **"Certainty," as it pertains to general damages, refers to the *fact* of damage**, not the amount. For "when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating

> his contract should not be permitted entirely to escape liability because the amount of the damage which he has caused is uncertain." *Id.* **"[T]he burden of uncertainty as to the amount of damage is upon the wrongdoer . . . ."** *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir.1977) (applying New York law). **"The plaintiff need only show a 'stable foundation for a reasonable estimate'" of the damage incurred as a result of the breach**. *Id.* (quoting *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 383, 357 N.Y.S.2d 857, 314 N.E.2d 419 (1974)). "**Such an estimate necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection."** *Entis v. Atl. Wire & Cable Corp.,* 335 F.2d 759, 763 (2d Cir.1964).

*Tractebel Energy Mktg.*, 487 F.3d at 110-11 (footnotes omitted) (emphasis added). *See also Alta Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 156 (2d Cir. 2026) (where "the non-breaching party has proven the *fact* of damages by a preponderance of the evidence, the burden of uncertainty as to the amount of damage is upon the wrongdoer.")

### C. <u>ACI's Lost Profits Are General Damages</u>

The Court agrees with ACI that its lost profits, which are the direct and probable consequence of Hertz's breach of the ACI Agreements' exclusivity provisions, are general damages. *See Tractebel Energy Mktg.*, 487 F.3d at 110-11. The damages may still be characterized as lost profits since, had the ACI Agreements been performed, ACI would have profited to the extent that its cost of performance was less than the total value of Hertz's promised payments. But, in this case, "the lost profits are the direct and probable consequence of the breach." *Id.* at 109. In other words, the lost profits are "the direct and immediate fruits of the contract" as opposed to being "the result of a separate agreement with a nonparty." *Biotronik,* 22 N.Y.3d at 806. As "[t]he profits are precisely what [ACI] bargained for, . . . only an award of damages equal to lost profits will put [ACI] in the same position he would have occupied had the contract been performed." *Tractebel Energy Mktg.*, 487 F.3d at 109-10. The Reorganized Debtor does not meaningfully contest ACI's assertion that its lost profits constitute general damages. (*See* D.I. 19 at 30–36). The Reorganized

Debtor simply contends that the Bankruptcy Court "applied the appropriate standard . . . for determining whether ACI was entitled to the damages it sought." *Id.* at 30.

Under New York law, lost profits constituting general damages are not subject to the heightened consequential damages standard, which permits recovery only if (1) it is demonstrated with certainty that the damages have been caused by the breach, (2) **the extent of the loss is capable of proof with reasonable certainty,** and (3) it is established that **the damages were fairly within the contemplation of the parties**. *See Tractebel Energy Mktg.*, 487 F.3d at 110-11.

### D. Whether ACI Failed to Preserve its Argument as to Application of the General Damages Standard

Although ACI assigns error to the Bankruptcy Court for its "selection" of the standard applicable to lost profits as consequential damages, rather than as general damages, it is clear that both parties repeatedly cited the "proof with reasonable certainty" standard applicable to lost profits sought as consequential or special damages in various briefs submitted to the Bankruptcy Court.

#### 1. The Reorganized Debtor's Briefs

For example, the Claims Objection asserts that, "[u]nder New York, a plaintiff seeking damages for a breach of contract must establish that: (1) such damages were actually caused by the breach; (2) the "particular damages were fairly within the contemplation of the parties to the contract at the time it was made"; and (3) the alleged loss is "capable of proof with reasonable certainty." (Bankr. D.I. 1401 at 22 (quoting *Kenford*, 67 N.Y.2d at 261 and citing *Ashland Mgt. Inc. v. Janien*, 82 N.Y.2d 395, 405 (1993)). Building on the wrong standard, the Claims Objection goes on to argue that "[t]he lost profit damages claimed here, however, were neither fairly within the contemplation of the parties nor are they capable of proof with reasonable certainty." (Claims Objection at 22). Asserting that ACI "can point to no contractual provisions that would enable this Court to calculate lost profits with reasonable certainty, particularly when considered in light of the fact that [ACI was]

physically unable to perform the amount of repairs for which [it] seeks recovery," the Reorganized Debtor urged the Bankruptcy Court to disallow ACI's Claims in their entirety. (*Id.* at 24).

Again, in its Proposed Findings of Fact and Conclusions of Law, the Reorganized Debtor cited the standard applicable to lost profits as consequential damages (Bankr. D.I. 1690 at 33), and proposed the following conclusions of law: "ACI is not entitled to damages here because it failed to prove that lost profits damages were fairly within the contemplation of the Parties (*see infra* § V.A) or capable of proof with reasonable certainty (*see infra* § V.B)." (*Id.*).

**2. <u>ACI's Briefs</u>**

Responding to the arguments raised in the Claims Objection, ACI asserts that its "lost profits here can be calculated with certainty." (Bankr. D.I. 1416 ("ACI's Response") at 11). Because the Claims Objection asserted that the amount of ACI's lost profits was not reasonably certain, ACI argues that any failure to have addressed the argument would have risked forfeiture. (*See* D.I. 25 at 18 ("ACI therefore was forced to argue that it satisfied such standards as to amount, or risk forfeiture. Moreover, because the general damages standard requires reasonable certainty as to the fact of damage, ACI was required in any event to assert it was reasonably certain that it suffered lost profits.")). The cases cited in ACI's Response, however, cited controlling New York case law in response both of the Reorganized Debtors' incorrect arguments that ACI's lost profits may not be recovered because they were not "within the contemplation of the parties" and not capable of proof with reasonable certainty.

With respect to the Reorganized Debtor's first argument – that lost profits were not "within the contemplation of the parties" because the Agreements do not use the words "lost profits" – ACI correctly points out that such an argument "adds a purported requirement in New York law that does not exist" (*id.* at 10), and cites *Biotronik* in support. *Biotronik* explains that lost profits are general damages when they are "the direct and immediate fruits of the contract" and consequential damages

(recoverable only when such damages were within the contemplation of the parties) when they are based on "collateral business arrangements." *See Biotronik,* 22 N.Y.3d 799 at 805-06. In any event, ACI explains "it would be illogical to assume that ACI entered into the Exclusivity Contracts if it did not intend to make revenue and profit on the vehicles Hertz promised to provide," and further "not credible for Hertz to claim that it did not know that ACI would lose its contracted for revenue (and profit) if Hertz sent vehicles to other vendors in breach of the Exclusivity Contracts." (*Id*. at 11). In any event, ACI's Response argues that "because the lost profits sought are 'money that the breaching party agreed to pay under the contract,' they naturally flow from the contracts and are recoverable." (*See id.* at 10-11 (quoting *Biotronik,* 22 N.Y.3d at 808-09 ("Although the lost profits sought by plaintiff are not specifically identified in the agreement, it cannot be said that defendant did not agree to pay them under the contract, as these profits flow directly from the pricing formula.")). ACI's Response goes on to quote several additional cases addressing lost profits as general damages. *See id.* (citing *Orester v. Dayton Rubber Mfg. Co.*, 228 N.Y. 134, 138-39 (Ct. App. 1920) (in case where tires were to be resold from defendant at a profit, holding that lost profits were general damages for breach of an exclusive distribution agreement); *Am. List Corp.*, 75 N.Y.2d at 43 (affirming award of lost profits affirmed where "it is clear that plaintiff has sought only to recover moneys which defendant undertook to pay under the contract"); *Coniber*, 137 A.D.3d at 1605-07 (affirming award of lost profits because "plaintiff seeks only to recover money that the breaching party agreed to pay under the contract[.]") (quotations omitted))).

With respect to the Reorganized Debtor's second argument – that ACI's lost profits are not capable of proof with reasonable certainty – ACI correctly pointed out that the cases cited by the Reorganized Debtor in support of this proposition were inapposite, as they involved start-up businesses or situations where there was no prior record of success for various ventures, whereas ACI is a well-established business with a long history of success, including working with Hertz,

which is evidenced by the fact that Hertz renewed each ACI Contract. (Bankr. D.I. 1416 at 11-12). ACI further asserted that "Hertz had produced partial spreadsheets, upon which ACI's expert relied, along with other admissions and representations by Hertz, of vehicles it sent to body shops other than ACI." As such, ACI argued, it "lost profits may be estimated with reasonable certainty and other methods of evaluation." (*Id*. at 12). This is consistent with New York case law holding that the plaintiff need only show a "stable foundation for a reasonable estimate" of the damage incurred as a result of the breach, and while such an estimate necessarily requires some improvisation, the party who has caused the loss may not insist on theoretical perfection. *Tractebel Energy Mktg.*, 487 F.3d at 110-11.

In its Proposed Findings of Fact and Conclusions of Law (Bankr. D.I. 1691), ACI proposes the following: "the Court finds that lost profits can be calculated with a ***reasonable degree of certainty*** in the amount of $12,615,362" and that "[u]nder New York law, "lost profits may be ***estimated with reasonable certainty*** and other methods of evaluation" (*id*. at 63). ACI, however, further proposes the following: "When lost profits are 'the natural and probable consequence of defendant's breach,' they are available to a plaintiff under New York law" (*id*. at 56 (quoting *Biotronik*, 22 N.Y.3d at 805)); "[t]here was ample testimony to support that ACI only seeks the money that Hertz agreed to pay under the ACI [Agreements], which included a profit margin due ACI" (*id*.); and "ACI 'seeks only to recover money that the breaching party [Hertz] agreed to pay under the contract[s]'" (*id*. at 57 (quoting *Coniber,* 137 A.D.3d at 1605–06)).

In sum, it is clear that ACI's pre- and post-trial submissions consistently raised the legal basis for applying the general damages standard – that its lost profits "naturally flow from the contracts" and were "the natural and probable consequence of [Hertz's] breach" – and consistently cited controlling New York case law relevant to the general damages standard. And although ACI refuted the Reorganized Debtors' assertion that ACI's lost profits were not capable of proof with

reasonable certainty, it was required to do so to ensure that it had not forfeited that argument. That said, ACI did not squarely assert that such certainty is not required for general damages under New York law, nor the proposition that, having proven "the *fact* of damages by a preponderance of the evidence, the burden of uncertainty as to the amount of damage is upon the wrongdoer" – *i.e.*, the Reorganized Debtor. *Alta Partners,* 165 F.4th at 156. In sum, although ACI failed to highlight the difference between the two standards for the Bankruptcy Court, the Court cannot say that ACI forfeited application of the correct standard to its lost profits damages.

### E. Remand Is Appropriate

ACI urges this Court to reverse the Order disallowing ACI's Claims in their entirety as it was based on ACI's failure to meet the higher evidentiary standard. The Reorganized Debtor appears to argue that the Court may simply ignore the distinction between the two standards (*see* D.I. 19 at 35), framing the appeal as a factual dispute subject to the clear error standard (s*ee id.* at 17-18, 27-30, 40-43). Even applying the general damages standard, the Reorganized Debtor argues, ACI is not entitled to lost profits based on the Bankruptcy Court's finding that ACI could not have handled 100% of Hertz's repairs, and other errors cited in ACI's expert's damages calculation, which findings the Reorganized Debtor asserts are not clearly erroneous. (*See id.* at 39-40). But ACI's appeal challenges the Opinion's application of the consequential damages legal standard, which is a legal issue reviewed *de novo. See VICI Racing*, 763 F.3d at 283. Contrary to the reasonable certainty required when lost profits resulting from a breach are consequential damages, "New York courts have significant flexibility in estimating general damages once the fact of liability is established." *Tractebel*, 487 F.3d at 112. And where, as here, "it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount," New York law counsels that "there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach." *Tractebel Energy Mktg.*, 487 F.3d at 110-11.

Here, ACI provided evidence of its lost profits and a viable method of calculating such profits. *See, e.g.*, *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 672 (S.D.N.Y. 1996) (citing *Adams v. Lindblad Travel, Inc.,* 730 F.2d 89, 92-93 (2d Cir. 1984)) (explaining the "proper formula" is revenues that the contracted-for activity would have generated minus the associated additional costs), *aff'd*, 122 F.3d 1055 (2d Cir. 1997). As set forth in detail in the Opinion, ACI's calculation was far from perfect. But New York law provides that "[a] stable foundation for a reasonable estimation 'necessarily requires some improvisation,' and '[t]he law will make the best appraisal that it can, summoning to its service whatever aids it can command.'" *Holland Loader Co. LLC v. FLSmidth A/S*, 769 F. App'x 40, 42 (2d Cir. 2019) (quoting *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926-27 (2d Cir. 1977)); *see also*, *Grace v. Corbis-Sygma*, 487 F.3d 113, 119 (2d Cir. 2007) (explaining that, "[w]hen damages are at some unascertainable amount below an upper limit and when the uncertainty arises from the defendant's wrong, the upper limit will be taken as the proper amount," such that plaintiff's "highest earning year" could represent his "earning capacity," even if such amount "may seem generous"). The Bankruptcy Court's determination that ACI was not entitled to damages at the highest end of its expert's calculations, based on ACI's capacity and issues with ACI's data and inputs, is well supported by the record, but likely does not support an award of zero damages,[7] where "the burden of uncertainty as to the amount of damage is upon the wrongdoer . . . ." – here, the Reorganized Debtor. *Alta Partners,* 165 F.4th at 156 (citations omitted). By denying ACI damages because it could not conclude ACI's "damages *calculation* is reasonable," *In re Rental Car*, 2025 WL

[7] As to what adjustments to the damage calculation may be appropriate, ACI suggests several reductions that may account for the errors identified by the Bankruptcy Court. (*See* D.I. 25 at 41-44 & n.14). The Reorganized Debtor's expert "illustrated for the Court that, when considering the alternative inputs in the record that Metzdorff ignored, Metzdorff's damages calculations would have been significantly lower." (Bankr. D.I. 1690 at 35).

2828228, at *27, the Opinion "erred in requiring [ACI] to prove the *extent* of its damages to a reasonable certainty," as "certainty of amount is not an element of general damages in New York." *Tractebel Energy Mktg.*, 487 F.3d at 111.

In sum, resolving the Claims Objection required application of the standard for lost profits as general damages under New York law. That standard was not clearly articulated by either party to the Bankruptcy Court. The Court is reluctant to remand this appeal, in light of the time and resources already dedicated to the lengthy evidentiary hearing and the Bankruptcy Court's thorough Opinion, along with the fact that any lack of clarity here can be traced directly to the parties' failure. The Court, however, is of the view that remand at this juncture is appropriate so that the Bankruptcy Court may consider, in the first instance, whether ACI provided some "stable foundation for a reasonable estimate," given that the burden of uncertainty as to the amount of damage is upon the wrongdoer, or whether there remains "good reason for refusing, on account of such uncertainty, any damages whatever for the breach," *see Tractebel Energy Mktg.*, 487 F.3d at 110, including for consideration of whether further proceedings with respect to such a determination may be appropriate.

## IV. <u>CONCLUSION</u>

Accordingly, the Order will be remanded for further proceedings not inconsistent with this Opinion. An appropriate order will be entered.